# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| GRISELDA NEGRETE VARGAS,<br><br>　　　　Petitioner,<br><br>　v.<br><br>CHAD WOLF, Acting Secretary of the U.S. Department of Homeland Security, et al.,<br><br>　　　　Respondents. | Case No. 2:19-cv-02135-KJD-DJA<br><br>**ORDER** |

Petitioner Griselda Negrete Vargas, a counseled immigration detainee, has filed an Amended Petition for Writ of Habeas Corpus (ECF No. 6) ("Amended Petition") under 28 U.S.C. § 2241 seeking relief to remedy her alleged unlawful detention. Currently before the Court is Respondents' Motion to Dismiss (ECF No. 13) ("Dismissal Motion"). Petitioner has opposed (ECF No. 14), and Respondents have replied (ECF No. 15). Also before the Court is Petitioner's Emergency Motion for Temporary Restraining Order (ECF No. 16) ("TRO Motion"). Respondents have opposed (ECF No. 19), and Petitioner has replied (ECF No. 20). For the reasons discussed below, Respondents' Dismissal Motion is denied, Petitioner's TRO Motion is denied as moot, and Petitioner's Amended Petition is granted in part and denied in part.

## **BACKGROUND**

Petitioner is a 36-year-old citizen of Mexico who is currently detained by the United States Immigration and Customs Enforcement ("ICE") division of the Department of Homeland Security ("DHS"). She last entered the United States in or about 2000. (Am. Petition at 4, ¶ 12.) She is married to a United States citizen, Gerardo Javier Zarate, and is the mother of four children who are also United States citizens. (*Id.*)

**I.    CRIMINAL PROCEEDINGS**

On May 16, 2019, Petitioner was arrested and charged in the District of Nevada with two federal drug offenses. *See USA v. Zarate, et al.*, 2:19-cr-00152-JAD-NJK. The criminal complaint

alleged that, on May 7, 2019, Petitioner delivered 496.7 gross grams (approximately one pound) of crystal methamphetamine to a confidential source in exchange for $2,000.00.  (*Id.*, ECF No. 1 at 7–8, ¶ 17.[1])  The confidential source asked for at least two pounds of crystal methamphetamine for the following week and Petitioner purportedly affirmed that the confidential source should be able to get whatever he/she requested.  (*Id.*)  The complaint was verified by a Special Agent of the Drug Enforcement Administration.  (*Id.* at 11.)  The following month, a federal grand jury returned an indictment charging Petitioner with (1) conspiracy to distribute a controlled substance under 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A)(viii), and (2) possession of a controlled substance with intent to distribute under 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii).  (*Id.*, ECF No. 22.)  Trial is currently set for May 5, 2020.  (*Id.*, ECF No. 68.)

The government did not seek detention during Petitioner's initial appearance and the magistrate judge released her on a personal recognizance bond.  (*Id.*, ECF No. 5.)  However, ICE took physical custody of Petitioner and detained her at the Nevada Southern Detention Center ("NSDC") in Pahrump, Nevada. (Am. Petition at 2, ¶ 3.)

## II. IMMIGRATION PROCEEDINGS

Days after her initial appearance, DHS initiated removal proceedings against Petitioner by filing a Notice to Appear charging her as removable under Section 212(a)(6)(A)(i)(I) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq*.  (*Id.* at 5, ¶ 17.)  With the help of counsel, Petitioner filed a bond request in the immigration court.  (*Id.* at ¶ 18.)  She provided an immigration judge ("IJ") with affidavits from her family members, letters of support from her close friends and children's teachers, letters demonstrating her good moral character and community involvement, evidence of her length of residence in the United States, her marriage certificate, her children's U.S. birth certificates, medical and school records for her children, and a copy of the docket in her federal criminal case showing that the magistrate judge released her and her husband on their own recognizance.  (ECF Nos. 6-1, 6-2, 6-3, 6-4, 6-5, 6-6, 6-7, 6-8, 6-9, 6-10, 6-11, 6-12.)

The IJ held a hearing and issued a bond memorandum denying Petitioner's bond request

---

[1] Petitioner's husband is her co-defendant in the criminal case, and he is charged with six drug offenses.

pursuant to INA § 236(a), 8 U.S.C. § 1226(a). (ECF No. 13-3.) The IJ noted that she had "broad discretion" in deciding what factors to consider in bond determinations, including a non-citizen's "criminal record, extensiveness of criminal activity, and whether he or she is a danger to the community." (*Id.* at 2 (citing *Matter of Guerra*, 24 I&N Dec. 37, 40 (B.I.A. 2006)).) The bond memorandum relies solely on the allegations and charges against Petitioner in the federal criminal case. (*Id.*) The IJ acknowledged that Petitioner had not been convicted and she was not the sole actor because the complaint also implicated her husband. (*Id.*) Nevertheless, "given the large amounts of narcotics involved as well as the clear depiction of [Petitioner's] role," the IJ found that "she had not met *her burden of proving* that she is not a danger to the community," and denied the bond request. (*Id.* at 2–3 (emphasis added).)

Petitioner appealed the bond denial to the Board of Immigration of Appeals ("BIA"). (Am. Pet. at 6, ¶ 18.) On November 26, 2019, the BIA dismissed Petitioner's appeal. (ECF No. 13-5.) In relevant part, the BIA's decision states:

> An alien in a custody determination under [INA §] 236(a)[, 8 U.S.C. § 1226(a),] must establish to the satisfaction of the Immigration Judge and this Board that he or she does not present a danger to persons or property, is not a threat to the national security. and does not pose a risk of flight. *See Matter of Adeniji*, 22 I&N Dec. 1102 (BIA 1999).…
>
> The record reflects that in May 2019, [Petitioner] was arrested and charged with Conspiracy to Distribute a Controlled Substance. Possession of a Controlled Substance with Intent to Distribute, and Distribution of a Controlled Substance (IJ at 1 ). Those charges were pending at the time of the Immigration Judge's decision. Given the seriousness and recency of the criminal charges, we agree with the Immigration Judge that [Petitioner] poses a danger to persons in her community. We are not persuaded that the Immigration Judge erred in considering evidence regarding [Petitioner's] arrests that have not yet resulted in convictions. Immigration Judges are not limited to considering only criminal convictions in assessing whether an alien is a danger to the community. *Matter of Guerra*, 24 I&N Dec. 37. 40-41 (BIA 2006). Moreover, an Immigration Judge may consider any evidence in the record that is probative and specific. *Id.*
>
> To the extent that the respondent argues on appeal that a United States District Court decision supports her argument that it is a violation of her due process rights to consider a pending criminal charge as a sole basis to determine that she is a danger to the community, we note that we are not bound by the decisions of the United States District Courts. *See Maller of K-S-*, 20 I&N Dec. 715 (BIA 1993).

(*Id.* at 4.)

During the pendency of the BIA appeal, Petitioner also sought cancelation of removal. (Am. Pet. at 6, ¶ 18.) In March 2020, she filed a motion for bond based on change of

1 circumstances, including the global COVID-19 pandemic and its spread and risk in ICE
2 confinement. (ECF No. 19-2.) Since detained at NSDC, Petitioner has made at least 13 sick call
3 requests for illnesses including dizzy spells causing loss of consciousness, severe headaches,
4 ringing and pain in her ears, frequent stomach pain and vomiting. (ECF Nos. 16-1, 16-2.)
5 Petitioner asserted that ICE detainees have an increased risk of contracting COVID-19, and her
6 personal risk was higher because she was not receiving adequate medical care. (ECF No. 19-2.)

7 On March 31, 2020, the IJ held a merits hearing on Petitioner's request for cancelation of
8 removal and also addressed the new bond motion. (ECF No. 19-3.) Petitioner claims the hearing
9 could not be completed due to repeated problems with the telephonic interpreter and the call from
10 DHS being dropped. (ECF No. 16 at 9–10.) Counsel's affidavit further alleges that Petitioner
11 fainted prior to the merits hearing, woke up to oxygen being administered, coughed throughout the
12 hearing, told counsel she did not feel well, and said she was afraid of dying if she contracted
13 COVID-19. (ECF No. 16-3.) Ultimately, the IJ denied Petitioner's request for cancelation of
14 removal, issued a removal order, and denied the new bond motion finding that no change in
15 circumstances was shown. (ECF Nos. 19-3, 19-4.) Petitioner intends to challenge the denial of her
16 request for cancellation of removal.

17 **III.   FEDERAL HABEAS PROCEEDINGS**

18 Petitioner commenced this habeas proceeding in December 2019 (ECF No. 1), and filed
19 the Amended Petition (ECF No. 6) shortly thereafter. She presents two grounds for relief under
20 the Fifth Amendment's Due Process Clause: (1) her bond proceedings and appeal were
21 constitutionally deficient because the IJ and BIA applied the wrong legal standard and imposed
22 the burden of proof on her rather than the government (*Id.* at 6–14, ¶¶ 23–46), and (2) her
23 prolonged civil detention without constitutionally adequate bond proceedings violates her core
24 liberty interest in freedom from bodily restraint (*Id.* at 14–18, ¶¶ 47–64). Petitioner further
25 contends that she has been prejudiced by the due process violations because the IJ relied solely on
26 legally insufficient evidence—her pending federal drug charges—to determine that she is a danger
27 to the community. In her request for relief, she asks this Court to, among other things, grant a writ
28 of habeas corpus directing Respondents to immediately release Petitioner from custody or order a

new bond hearing in which the government bears the burden of proof to show, by clear and convincing evidence, that she is presently dangerous or a flight risk. (*Id.* at 18–19.)

Respondents filed the Dismissal Motion in January 2020. After the Dismissal Motion was fully briefed, Petitioner filed the TRO Motion on April 6, 2020. She asks the Court to issue a TRO ordering Respondents to immediately release her from custody, or in the alternative, ordering a bond hearing that complies with due process.

## DISCUSSION

### I. GOVERNING LAW

#### A. Federal Habeas Jurisdiction

Federal district courts may grant a writ of habeas corpus when a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A non-citizen petitioner held in custody pursuant to removal proceedings may "bring collateral legal challenges to the Attorney General's detention authority . . . through a petition for habeas corpus." *Casas-Castrillon v. DHS*, 535 F.3d 942, 946 (9th Cir. 2008). Federal district courts have habeas jurisdiction under § 2241 to review "bond hearing determinations for constitutional claims and legal error." *Singh v. Holder*, 638 F.3d 1196, 1200 (9th Cir. 2011) (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)). Although the Attorney General's "discretionary judgment" is expressly precluded from judicial review, 8 U.S.C. § 1252(g), "claims that the discretionary process itself was constitutionally flawed are cognizable in federal court on habeas because they fit comfortably within the scope of § 2241." *Id.* at 1202 (internal quotation marks and citation omitted).

#### B. Detention of Non-Citizens Under the INA

The INA provides a "complex statutory framework of detention authority," codified at 8 U.S.C. §§ 1226 and 1231. *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008). Where a non-citizen falls within the statutory scheme "can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Id.* In general, § 1226(a) governs detention during the pendency of a non-citizen's removal proceedings, and § 1231 governs detention following the issuance of a final

removal order.[2]  DHS has discretionary authority under § 1226(a) to determine whether a non-citizen should be detained, released on bond, or released on conditional parole pending the completion of removal proceedings, unless the non-citizen falls within one of the categories of criminals described in § 1226(c), for whom detention is mandatory.  In this case, Petitioner is detained pursuant to § 1226(a).

When a non-citizen is arrested and taken into immigration custody pursuant to § 1226(a), ICE makes an initial custody determination, including the setting of bond.  *See* 8 C.F.R. § 236.1(c)(8).  After the initial custody determination, a § 1226(a) detainee may request a bond redetermination by an IJ.  8 C.F.R. § 236.1(d)(1).  Detained individuals are "not limited to only one bond reduction request."  *Matter of Uluocha*, 20 I. & N. Dec. 133, 134 (BIA 1989).  They may continue to seek custody redetermination until such time as the underlying removal proceedings become administratively final.  *Matter of Valles-Perez*, 21 I. & N. Dec. 769, 772 (B.I.A. 1997).  Once an IJ has made an initial bond redetermination, a detainee's request for a subsequent bond redetermination must be made in writing and show that his or her circumstances have changed materially since the prior bond redetermination.  8 C.F.R. § 1003.19(e).

Section 1226(a) is silent as to which party bears the burden of proof at a bond hearing and the quantum of evidence necessary to satisfy that burden.  However, immigration regulations and the BIA have interpreted § 1226(a) as placing the burden on the detainee to show "to the satisfaction of the [IJ] that he or she merits release on bond."  *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006); 8 C.F.R. § 236.1(c)(8) (stating that a § 1226(a) detainee may be released on bond provided that he or she "demonstrate[s] to the satisfaction of the [IJ] that such release would not pose a danger to property or persons," and he or she "is likely to appear for any future proceeding").  An IJ may consider a number of discretionary factors to make this determination,[3]

---

[2] The Ninth Circuit has held that § 1226(a) continues to apply while a detainee pursues judicial review. *E.g.*, *Prieto-Romero*, 534 F.3d at 1062–63; *Casas-Castrillon*, 535 F.3d at 945–48.

[3] The "*Guerra* factors" include: (1) whether the detainee has a fixed address in the United States; (2) the detainee's length of residence in the United States; (3) the detainee's family ties in the United States, and whether they may entitle the detainee to reside permanently in the United States in the future; (4) the detainee's employment history; (5) the detainee's record of appearance in court; (6) the detainee's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the detainee's history of immigration violations; (8) any attempts by the detainee to flee

but the "*Guerra* factor most pertinent to assessing dangerousness" is the detainee's " 'criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses'." *Singh*, 638 F.3d at 1206 (citing *Guerra*, 20 I. & N. Dec. at 40).

If § 1226(a) detainees "are dissatisfied with the IJ's bond determination, they may file an administrative appeal so that 'the necessity of detention can be reviewed' " by the BIA. *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011) (quoting *Prieto-Romero*, 534 F.3d at 1059). If the BIA denies relief, detainees then "may file a petition for habeas corpus in the district court," and if the decision is unfavorable, "[t]hey may then appeal to" the Court of Appeals. *Id.* (citing *Singh*, 638 F.3d at 1200–03).

### C. Due Process Considerations

#### 1. Burden of Proof

"The Supreme Court has repeatedly reaffirmed the principle that 'due process places a heightened burden of proof on the state in civil proceedings in which the individual interests at stake, are both particularly important and more substantial than mere loss of money'." *Singh*, 638 F.3d at 1204 (quoting *Cooper v. Oklahoma*, 517 U.S. 348, 363 (1996) (alterations in original)).

For nearly two decades, the Supreme Court and the Ninth Circuit have "grappled in piece-meal fashion with whether the various immigration detention statutes may authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing." *Rodriguez v. Hayes* ("*Rodriguez I*"), 591 F.3d 1105, 1114 (9th Cir. 2010). In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court held that § 1231(6), "read in light of the Constitution's demands, limits an alien's post-removal period detention to a period reasonably necessary to bring about that alien's removal from the United States," and "does not permit indefinite detention." *Id.* at 689. The Supreme Court noted that a "statute permitting indefinite detention of an alien would raise a serious constitutional problem" since the Fifth Amendment's Due Process Clause forbids the government to deprive any person of liberty without due process of law. *Id.* at 690. Relying on the canon of constitutional avoidance, *Zadvydas* held that "once removal is no longer

---

persecution or otherwise escape authorities; and (9) the detainee's manner of entry to the United States. *Singh*, 638 F.3d at 1206 n.5 (citing *Guerra*, 20 I. & N. Dec. at 40).

reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 690, 699.

After *Zadvydas*, the Ninth Circuit held that "prolonged detention" of a non-citizen under § 1226(a) "without adequate procedural protections," such as an individualized bond hearing before an IJ, "would raise serious constitutional concerns." *Casas-Castrillon v. DHS*, 535 F.3d 942, 950 (9th Cir. 2008). In *Casas-Castrillon*, a lawful permanent resident detained for nearly seven years sought habeas relief while his petition for review of his removal order was pending.[4] Recognizing constitutional concerns, the Ninth Circuit construed § 1226(a) to require the government to provide a detainee with "a neutral forum in which to contest the necessity of his continued detention," at which the government must establish that the individual poses a flight risk or a danger to the community in order to justify continued detention. *Id.* at 949, 951.[5] "Even where detention is permissible, … due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement 'outweighs the individual's constitutionally protected interest in avoiding physical restraint'." *Id.* at 950 (citing *Zadvydas*, 533 U.S. at 690); *see also Prieto-Romero*, 534 F.3d at 1065 (recognizing "[t]here is an important difference between whether detention is statutorily authorized and whether it has been adequately determined to be necessary as to any particular person"). The Ninth Circuit concluded that a detainee "is entitled to release on bond *unless the government establishes* that he is a flight risk or will be a danger to the community." *Casas-Castrillon*, 535 F.3d at 951 (emphasis added, internal quotation omitted).

In *Singh*, the Ninth Circuit revisited the procedural requirements for a *Casas* hearing and held that, based "the substantial liberty interest at stake," the government "must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond at a *Casas* hearing." 638 F.3d at 1203. The district court denied Singh's petition, concluding that the procedural due process rights afforded to him by *Casas-Castrillon* and *Prieto-Romero*

---

[4] Although Casas was initially detained under a mandatory provision of § 1226(c), which does not provide for a bond hearing, § 1226(c) no longer controlled as his removal proceedings progressed, the removal order became administratively final, and he sought review of the removal order. *Id.* at 945–948. The Ninth Circuit thus held that the "government's authority to detain Casas [fell] under § 1226(a)." *Id.* at 948.

[5] This process has since been referred to as a "*Casas* hearing" or "*Casas* bond hearing." *E.g.*, *Singh*, 638 F.3d at 1203.

were satisfied because he "received an individualized bond hearing before a neutral IJ." *Id.* at 1201–02. The government argued that the lower preponderance of the evidence standard should apply because, *inter alia*, Singh's liberty interest was "diminished because he has already been afforded a removal hearing." *Id.* at 1204. The Ninth Circuit noted that the Supreme Court " 'repeatedly has recognized that civil commitment for *any* purpose constitutes a significant deprivation of liberty'." *Id.* (quoting *Addington v. Texas*, 441 U.S. 418, 425, 427 (1979) (emphasis added) (concluding that the individual's interests were "of such weight and gravity that due process requires the state to justify confinement by proof more substantial than a mere preponderance of the evidence"). The *Singh* court concluded that " '[r]egardless of the stage of the proceedings, the same important interest is at stake—freedom from prolonged detention'." *Id.* at 1205 (quoting *Diouf v. Napolitano*, 634 F.3d 1081 (9th Cir. 2011) (rejecting argument that § 1231(a)(6) detainees have a lesser liberty interest in freedom from detention than § 1226(a) detainees)).

The Ninth Circuit summarized its prior decisions construing the immigration detention statutes in *Rodriguez v. Robbins* ("*Rodriguez III*"), 804 F.3d 1060 (9th Cir. 2015), *rev'd in part sub. nom. by Jennings v. Rodriguez*, --- U.S. ----, 138 S. Ct. 830 (2018). The *Rodriguez III* court considered a grant of summary judgment and corresponding permanent injunction for a class of non-citizens who asserted that their prolonged detention under §§ 1225(b), 1226(a), 1226(c), and 1231(a) without individualized bond hearings raised serious constitutional concerns. 804 F.3d at 1065–66. The Ninth Circuit concluded, "the canon of constitutional avoidance requires us to construe the statutory scheme to provide all class members who are in prolonged detention with bond hearings at which the government bears the burden of proving by clear and convincing evidence that the class member is a danger to the community or a flight risk." *Id*. at 1074. The court held, for the first time, that § 1226(a) detainees were statutorily "entitled to automatic bond hearings after six months of detention." *Id.* at 1085. The government argued that the district court erred by imposing the wrong standard of proof at bond hearings. *Id.* at 1087. However, the Ninth Circuit affirmed the district court's holding that *Singh* requires the government to justify a non-citizen's detention by clear and convincing evidence. *Id.*

The Supreme Court criticized the Ninth Circuit's reading of §§ 1225(b), 1226(a), and

9

1226(c) in *Jennings*. The *Jennings* court found that *Rodriguez III* misapplied the canon of constitutional avoidance to hold that §§ 1225(b), 1226(a), and 1226(c) implicitly contain a reasonableness determination and afford non-citizens a statutory right to periodic bond hearings. 138 S. Ct. at 836, 847–48. However, *Jennings* expressly declined to reach the merits of the parties' constitutional arguments and remanded the case to the Ninth Circuit. *Id.* at 851. The Ninth Circuit likewise remanded the case to the district court to consider the petitioners' "vital constitutional issues" on their merits. *Rodriguez v. Marin* ("*Rodriguez IV*"), 909 F.3d 252, 255–56 (9th Cir. 2018). *Rodriguez IV* also noted:

> We have grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so. Arbitrary civil detention is not a feature of our American government.

*Id.* at 256–57.

The Court acknowledges that there is no binding Supreme Court or Ninth Circuit precedent on this issue. However, since *Jennings*, numerous district courts in this circuit have concluded that due process requires the government to prove by clear and convincing evidence that a non-citizen is a flight risk or a danger to the community to justify denial of bond. *E.g.*, *Ixchop Perez v. McAleenan*, --- F. Supp. 3d ---, 2020 WL 1181492, at *4 (N.D. Cal. Jan. 23, 2020) (rejecting the government's "attempt to cabin *Singh* to only apply to *Casas* hearings" as "illogical" since such interpretation would "create a system in which a detained noncitizen bears the burden at their initial bond hearing, but the burden then shifts at a *Casas* hearing"); *Singh v. Barr* ("*Singh v. Barr*"), 400 F. Supp. 3d 1005, 1017–18 (S.D. Cal. 2019) ("Because *Jennings* expressly addressed itself to the mandates of the INA, and not the Constitution, the procedural due process holding[] in *Singh* … still stand[s]."); *Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762, 775 (N.D. Cal. 2019); *Calderon-Rodriguez v. Wilcox*, 374 F. Supp. 3d 1024, 1033 n.8 (W.D. Wash. 2019); *Cortez v. Sessions*, 318 F. Supp. 3d 1134 (N.D. Cal. 2018), *appeal dismissed*, 2018 WL 4173027 (9th Cir. July 25, 2018); *Ramos v. Sessions*, 293 F. Supp. 3d 1021, 1029–30 (N.D. Cal. 2018).[6]

---

[6] Many more unpublished and out-of-circuit district court cases have come to the same conclusion. *E.g.*, *Brito v. Barr*, 415 F.Supp.3d 258, 266 (D. Mass. 2019) ("[T]he Court holds that the Due Process Clause

The Ninth Circuit recently confirmed that *Jennings* did not invalidate *Singh* or *Rodriguez III*'s holdings as to the clear-and-convincing- evidence standard required to satisfy due process in bond hearings. *Aleman Gonzalez v. Barr*, --- F.3d ---, 2020 WL 1684034, at *16 (9th Cir. Apr. 7, 2020). Although *Jennings* undoubtedly rejected a *statutory* construction of § 1226(a) to require a particular burden, the Ninth Circuit emphasized *Singh*'s determination "that *constitutional procedural due process* required the government to meet the clear and convincing burden of proof standard." *Id.* (emphasis added) (citing *Singh*, 638 F.3d at 1203–04; *Kashem v. Barr*, 941 F.3d 358, 380 (9th Cir. 2019)). *Rodriguez III* "relied on *Singh* to affirm a clear and convincing burden of proof for bond hearings held pursuant to our constructions of the immigration detention statutes." *Id.* (citing *Rodriguez III*, 804 F.3d at 1087). Thus, *Jennings* did not overturn *Singh* or *Rodriguez III*'s burden-of-proof holdings. *Id.*

In sum, the Fifth Amendment's Due Process Clause requires the government to prove a detainee's flight risk or dangerousness, by clear and convincing evidence, to justify continued detention.

### 2. Prolonged Detention

Post-*Jennings*, district courts have grappled with how to address due process challenges to prolonged mandatory detention. *E.g.*, *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1116 (W.D.

---

requires the Government bear the burden of proof in § 1226(a) bond hearings."); *Darko v. Sessions*, 342 F. Supp.3d 429, 434–36 (S.D.N.Y. 2018) (post-*Jennings*, a "consensus view" has emerged that where "the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified"); *Pensamiento v. McDonald*, 315 F. Supp. 3d 684, 691–92 (D. Mass. 2018); *Portillo v. Hott*, 322 F. Supp. 3d 698, 709 n.9 (E.D. Va. 2018); *Figueroa v. McDonald*, --- F. Supp. 3d ---, 2018 WL 2209217, at *5 (D. Mass. May 14, 2018); *see also Rajesh v. Barr*, 2019 WL 5566236, at *6 (W.D.N.Y. Oct. 29, 2019) (concluding that "the Fifth Amendment's Due Process Clause requires the Government to bear the burden of proving, by clear and convincing evidence, that detention is justified at a bond hearing under § 1226(a)"); *Marroquin Ambriz v. Barr*, 2019 WL 5550049, at *8 (N.D. Cal. Oct. 28, 2019) ("Marroquin Ambriz is entitled to a hearing at which the government bears the burden of proof, by clear and convincing evidence, that he is dangerous or a flight risk."); *Aparicio-Villatoro v. Barr*, 2019 WL 3859013, at *6 (W.D.N.Y. Aug. 16, 2019) (relying on *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011)); *Hernandez-Lara v. ICE*, 2019 WL 3340697, at *4 (D.N.H. July 25, 2019) ("This court finds persuasive those opinions that have held that, in § 1226(a) cases, due process requires the burden be placed on the government."); *Diaz-Ceja v. McAleenan*, 2019 WL 2774211, at *10 (D. Colo. July 2, 2019) ("The court finds that allocating the burden to a noncitizen to prove that he should be released on bond under § 1226(a) violates due process"); *Gonzalez v. Bonnar*, 2019 WL 330906, at *6 (N.D. Cal. Jan. 25, 2019) ("[N]umerous courts post-*Jennings* have rejected the government's suggestion that *Jennings* reversed appellate court decisions placing the burden on the government to justify prolonged detention by clear and convincing evidence.").

11

Wash. 2019), *appeal dismissed*, 2019 WL 5885047 (9th Cir. Oct. 9, 2019). "Nearly all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process." *Id.* (collecting cases) (internal quotation marks and citation omitted). To analyze whether due process requires a bond hearing for a § 1226(a) detainee, district courts "must conduct an individualized due process analysis pursuant to the conventional *Mathews v. Eldridge*, 424 U.S. 319 (1976) factors." *Singh v. Barr*, 400 F. Supp. 3d at 1020; *Lopez Reyes*, 362 F. Supp. 3d at 775.[7]

In *Mathews*, the Supreme Court said the "fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." 424 U.S. at 333 (internal quotation marks and citation omitted). *Mathews* articulated a three-part test to determine whether established procedures provide constitutionally adequate due process. *Id.* at 334–35. To determine the specific dictates of due process in a given situation, courts must consider: (1) the private interest affected by government action; (2) the risk of an erroneous deprivation of the private interest through the procedures used, and the probable value, if any, of additional or alternative procedures; and (3) the government's interest, including the function involved and the burdens that additional or alternative procedures would entail. *Id.*

## II. PETITIONER HAS DEMONSTRATED DUE PROCESS VIOLATIONS

Petitioner's Amended Petition alleges two violations of the Fifth Amendment's Due Process Clause: (1) her bond proceedings and BIA appeal were constitutionally deficient because they imposed the burden of proof on her rather than the government (ECF No. 6 at 6–14, ¶¶ 23–46), and (2) her prolonged civil detention requires a new constitutionally adequate bond proceeding (*id.* at 14–18, ¶¶ 47–64).

### A. Sufficiency of Petitioner's Bond Hearing

In the Dismissal Motion, Respondents assert that Petitioner's first claim fails because the IJ applied the correct burden of proof. (ECF No. 13 at 11–14.) They argue that Petitioner conflates the burden of proof for the initial bond hearing with the burden applicable to *Casas* bond hearings,

---

[7] When reviewing a due process challenge by a § 1225(b) asylum detainee, district courts have used a "case-specific analysis" rather than the *Mathews* test. *Banda*, 385 F. Supp. 3d at 1116–18 (collecting cases).

which they acknowledge requires the government to justify detention by clear and convincing evidence. Respondents maintain that Petitioner does not fall into the category of § 1226(a) detainees entitled to *Casas* hearings, *i.e.*, those whose removal orders are administratively final. The IJ properly applied the *Guerra* factors under the correct burden of proof, they contend, in a full and individualized bond hearing where Petitioner was allowed to present evidence in support of her bond request. Thus, they ask the Court to deny her request.

In her response, Petitioner counters that Respondents fail to address the recent developments across numerous federal district courts nationwide in which courts have held that due process requires the government to bear the burden of proving, by clear and convincing evidence, that continued detention is justified at a § 1226(a) bond hearing. (ECF No. 14 at 2–5; *see also* Am. Pet., ECF No. 6 at 7–8, ¶ 27 (collecting cases).) The sole evidence used by the IJ to conclude that Petitioner was dangerous was the pending federal criminal charges, which Petitioner contends was a due process violation. She confirms she is not requesting a *Casas* hearing, but rather a second bond hearing that applies the correct burden of proof.

In their reply, Respondents argue that no authoritative Supreme Court, Ninth Circuit, or District of Nevada opinion, or any federal statute or regulation supports a clear-and-convincing-evidence standard, and her situation is distinguishable from other cases based on the varying statutes authorizing detention. (ECF No. 15 at 2–4.) In particular, they point to the IJ's reliance on a DEA agent's sworn statement outlining her alleged crimes and her specific involvement in the alleged criminal activity. Respondents maintain that, although Petitioner offered statements by family members and friends, she did not rebut or refute the probative and specific DEA statements. By arguing that the IJ misapplied the *Guerra* factors, Respondents further assert that Petitioner is improperly asking this Court to directly review the IJ's discretionary bond decision, which the INA expressly forbids.

As a threshold matter, the Court disagrees with Respondents' characterization of Petitioner's claim as one for direct review of the IJ's discretionary bond decision. The gravamen of her claim is the erroneous legal standard applied by the IJ and BIA, which placed the burden of proof on her. The Amended Petition references the evidence presented in the bond hearing and

13

IJ's application of the *Guerra* factors to demonstrate how the erroneous burden of proof caused her prejudice—not to challenge the IJ's exercise of discretion. Because her claim focuses on a constitutional flaw in the bond hearing, the Court finds that it is cognizable on federal habeas. *See Singh*, 638 F.3d at 1202.

The burden of proof applied to Petitioner's bond redetermination by the IJ and affirmed by the BIA contravenes the demands of due process. The recent district court cases addressing this issue uniformly agree— to satisfy due process demands, the government must prove by clear and convincing evidence that a non-citizen is a flight risk or danger to the community to justify continued detention. Furthermore, the Ninth Circuit foreclosed any doubts about this demanding burden of proof in *Aleman Gonzalez* in which the panel explained that *Jennings* rejected a particular burden under § 1226(a)'s *statutory* language—it did not reject Ninth Circuit precedent holding that "*constitutional procedural due process* require[s] the government to meet the clear and convincing burden of proof standard." *Aleman Gonzalez*, 2020 WL 1684034, at *16 (emphasis added) (citing *Singh*, 638 F.3d at 1203–04; *Kashem*, 941 F.3d at 380 (describing *Singh*'s clear and convincing evidence burden as a procedural due process standard "which applies in a range of civil proceedings involving substantial deprivations of liberty")). As the Ninth Circuit reemphasized in *Rodriguez IV*, "[c]ivil detention violates due process outside of 'certain special and narrow nonpunitive circumstances'." 909 F.3d at 257 (quoting *Zadvydas*, 533 U.S. at 690).

Here, there is no factual dispute as to what burden was applied in Petitioner's bond proceedings. The IJ expressly stated that Petitioner "had not met *her burden of proving* that she is not a danger to the community." (ECF No. 13-3 at 2–3.) The BIA recited the same standard. (ECF No. 13-5 at 4.) The Court therefore finds that the bond determinations were legally incorrect and constitutionally deficient.

Having identified constitutional error, the Court next examines whether the error was prejudicial. *See Singh*, 638 F.3d at 1205 (analyzing whether an IJ's application of an erroneous evidentiary burden at a bond hearing prejudiced the § 1226(a) detainee). Based on the evidence Petitioner presented to the IJ and the procedural history of her federal criminal case, the Court concludes that she has shown prejudice.

Petitioner presented evidence to the IJ that may well support a finding that she is not presently dangerous. The IJ's May 2019 bond memorandum denying Petitioner's bond motion relied solely on the pending criminal charge against her to justify dangerousness. (ECF No. 13-3 at 2.) The IJ did not discuss any evidence Petitioner provided: affidavits from her family members, letters of support from her close friends and children's teachers, letters demonstrating her good moral character and community involvement, evidence of her length of residence in the United States, her marriage certificate, her children's U.S. birth certificates, medical and school records for one child, and a copy of the docket in her federal criminal case showing that the magistrate judge released her and her husband on their own recognizance. (ECF Nos. 6-1, 6-2, 6-3, 6-4, 6-5, 6-6, 6-7, 6-8, 6-9, 6-10, 6-11, 6-12.) In her March 2020 motion for bond redetermination based on changed circumstances, Petitioner represented that she was not receiving adequate medical care for severe stomach pain, frequent bouts of vomiting, and constant ringing and pain in her ear, and she was concerned about the lack of precautions at NSDC to prevent the spread of COVID-19 among detainees. (ECF No. 19-2.) She has submitted more than a dozen sick call requests for various illnesses, including dizzy spells causing loss of consciousness, severe headaches, ringing and pain in her ears, frequent stomach pain and vomiting.[8] (ECF Nos. 16-1, 16-2.) Given the amount of evidence she presented, as well as her release on her own recognizance in the federal criminal case, it is reasonable to conclude that the IJ's bond determination could easily have been different if the government was required to prove dangerousness by clear and convincing evidence. *See, e.g.*, *Singh*, 638 F.3d at 1205 ("The evidence that Singh was a danger and a flight risk was by no means overwhelming, so the standard of proof could well have affected the outcome of the bond hearing."). As in *Singh*, the Court finds that Petitioner was prejudiced because it cannot "conclude that the clear and convincing evidence standard ... would not have affected the outcome of the bond hearing." *Id.*

---

[8] Petitioner's medical conditions are particularly salient to Petitioner's current request for release. As discussed below, new ICE guidance states that a detainee's "potentially higher-risk for serious illness from COVID-19 should be considered a factor weighing in favor of release." Burg, Peter, Assist. Dir., ICE Enforcement and Removal Operations, Updated Guidance: COVID-19 Detained Docket Review (April 4, 2020), *available at* https://www.ice.gov/doclib/coronavirus/attk.pdf (last visited April 16, 2020).

### B.      Petitioner's Prolonged Detention

With regard to Petitioner's second due process claim regarding prolonged detention without a proper bond hearing, Respondents argue that her detention does not violate due process because she received adequate process through the bond hearing and BIA appeal. (ECF No. 13 at 14–18; ECF No. 15 at 5–6.) They contend that her second claim fails under the *Mathews* test. Although her interest in freedom from physical restraint is generally strong under the first factor, Respondents assert that the Supreme Court has never held that detainees have a constitutional right to release during the pendency of removal proceedings. As to the second factor, they argue that the existing § 1226(a) framework provides extensive safeguards to protect against the risk of arbitrary deprivation of liberty while also protecting the government's interests in ensuring that non-citizens do not abscond or commit crimes during the pendency of removal proceedings. Under the third factor, Respondents claim the government's interests in the prompt execution of removal orders is legitimate and significant. Because Petitioner does not plausibly allege that the IJ would have granted bond even if the burden of proof was on the government, and she can request a custody redetermination should her circumstances change, Respondents further contend that Petitioner cannot show prejudice. Accordingly, Respondents argue Petitioner cannot show that her detention is impermissibly prolonged or lacking process.

Petitioner asserts that her prolonged detention without a proper bond hearing cannot withstand scrutiny under the *Matthews* test because (1) her private interest—freedom from physical restraint—is strong, (2) the existing § 1226(a) procedural framework did not provide constitutionally-adequate due process against arbitrary detention, and (3) the government's specific interest at stake—the ability to detain Petitioner without providing a constitutionally adequate bond hearing—is weak. (ECF No. 14 at 5–8.) Petitioner contends she can demonstrate prejudice from this due process violation. She points out that she submitted evidence of strong family and community ties, the government did not seek detention in her criminal case, and the magistrate judge released her on her own recognizance. Because the evidence of dangerousness was by no means overwhelming, Petitioner argues that the IJ's error demonstrates prejudice.

The Court finds that Petitioner has satisfied the *Mathews* test. First, her interest in personal

freedom is significant and obvious. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. "[L]iberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Rodriguez IV*, 909 F.3d at 256–57 (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)). "Courts have found that failure to provide bond determinations in cases involving similar detention periods—i.e., 9 to 16 months—violate due process." *Singh v. Barr*, 400 F. Supp. at 1021 (collecting cases).[9] However, courts "need not speculate whether 'a certain length of detention, standing alone, would require an additional bond hearing'." *Id.* (quoting *Lopez Reyes*, 362 F. Supp. 3d at 776). It is sufficient for the purposes of a *Mathews* analysis to find that the length of a petitioner's detention " 'has been sufficiently long to establish a strong private interest'." *Id.* Here, Petitioner has been detained for approximately 11 months without a constitutionally adequate bond hearing. The Court finds that 11 months is sufficiently long to establish her strong private interest.

Second, Petitioner's situation clearly shows a risk of erroneous deprivation of her private interest through the IJ's use of a constitutionally deficient burden of proof. As explained above, Petitioner has demonstrated prejudice under the existing statutory and regulatory framework. The BIA affirmed the IJ's application of the lower burden of proof. (ECF No. 13-5 at 4.) The BIA rejected Petitioner's due process challenge out of hand, noting that the BIA is "not bound by the decisions of the United States District Courts." *Id.* (citation omitted). Although the BIA's decision predates the Ninth Circuit's recent opinion in *Aleman Gonzalez*, their conclusory statement in the face of uniform judicial consensus indicates that the current bond procedures are insufficient to guard against due process violations. Notably, Respondents did not respond to Petitioner's argument that the cost of a new bond hearing is minimal. Because a new hearing will protect Petitioner's fundamental liberty interest, and she has provided specific and probative evidence suggesting that she is not a danger to the community, the value of a new bond hearing in which the IJ applies the correct burden of proof is high. The Court finds that a new bond hearing will

---

[9] *See also Banda*, 385 F. Supp. 3d at 1116 (noting that some courts consider the length of detention "the most important factor" when assessing reasonableness).

safeguard against arbitrary deprivation of Petitioner's freedom from physical restraint.

Lastly, Respondents have a significant interest, but it does not outweigh Petitioner's. "Although the government has valid interests in detaining individuals that pose a danger to the community, the Supreme Court has 'upheld preventive detention based on dangerousness only when limited to specially dangerous individuals and subject to strong procedural protections." *Lopez Reyes*, 362 F. Supp. 3d at 776 (quoting *Zadvydas*, 533 U.S. at 691). On its face, the relative importance of this interest is measurably lower than Petitioner's liberty interest. But even with further scrutiny, the government's interest still falls short.

The Ninth Circuit has explained that *Casas-Castrillon* and *Guerra* contemplate that criminal history alone may be insufficient to justify detention. *Singh*, 638 F.3d at 1206. "The *Guerra* factor most pertinent to assessing dangerousness" is the detainee's " 'criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses.'" *Id.* (citing *Guerra*, 20 I. & N. Dec. at 40). As described above, the IJ's May 2019 bond memorandum relied solely on Petitioner's pending criminal charge to justify the finding of dangerousness. (ECF No. 13-3 at 2.) In light of the minimal burden of a new bond hearing and specific evidence suggesting Petitioner is not a danger to the community, the government has not overcome the probative value of such hearing. In addition, ICE recently issued guidance instructing its field offices to conduct a "Detained Docket Review" in light of the COVID-19 pandemic. Burg, *supra* n.8, Updated Guidance: COVID-19 Detained Docket Review. Where a § 1226(a) detainee does not pose a danger to property or persons, the detainee's "potentially higher-risk for serious illness from COVID-19 should be considered a factor weighing in favor of release." *Id.* at 3. The new guidance further supports the probative value of a new bond hearing. For these reasons, the Court concludes that requiring Respondents to provide Petitioner with a new bond hearing will not significantly undermine the government's interest.

**C.     The Appropriate Remedy**

This decision identifies two due process violations with respect to Petitioner's continued detention. She succeeded in showing that her bond proceedings violated due process, and also demonstrated that, under *Mathews* and the particular facts of her case, due process requires a new

bond hearing in which the IJ requires the government to prove her flight risk or dangerousness, by clear and convincing evidence, to justify continued detention.

Turning to the question of remedy, the Court finds that a new bond hearing conducted under the standard articulated in this order is appropriate rather than immediate release. *E.g.*, *Singh v. Barr*, 400 F. Supp. 3d at 1022–23; *Lopez Reyes*, 362 F. Supp. 3d at 778; *Calderon-Rodriguez*, 374 F. Supp. 3d at 1037; *Cortez*, 318 F. Supp. 3d at 1147. The new bond hearing must be held on an expedited basis. In the end, the IJ may find that the government has met its burden by clear and convincing evidence, in which case bond would be unwarranted. However, if the government is unable to justify Petitioner's continued detention at the new bond hearing, she should be released on appropriate conditions. The Court therefore denies Respondents' Dismissal Motion and grants Petitioner's Amended Petition with respect to her request for an expedited, new bond hearing.

### III. PETITIONER'S TRO MOTION IS MOOT

In her TRO Motion, Petitioner seeks the same relief that she requests in her Amended Petition, *i.e.*, an order requiring Respondents to provide her with a bond hearing or immediate release from ICE custody. Because the Court has now addressed her Amended Petition on its merits and grants relief, the TRO Motion is denied as moot.

### IV. PETITIONER'S REQUEST FOR ATTORNEY'S FEES AND COSTS

Petitioner requests an award of attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), 5 U.S.C. § 504 and 28 U.S.C. § 2412. (ECF No. 6 at 19.) The EAJA authorizes an "award to a prevailing party ... [of] fees and other expenses ... incurred by that party in any civil action ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d). Within 30 days of this order, Petitioner may file a motion requesting and substantiating reasonable fees and costs under the EAJA, the Federal Rules of Civil Procedure, and the Local Rules of Practice.

**IT IS THEREFORE ORDERED:**

1. Petitioner Griselda Negrete Vargas' Amended Petition (ECF No. 6) is GRANTED IN PART and DENIED IN PART as explained in this order.

2. **On or before April 28, 2020**, Respondents must provide Petitioner with a new bond

hearing before an IJ. At that hearing, the government must prove, by clear and convincing evidence, that Petitioner is a flight risk or danger to the community to justify continued detention. If the government is unable to meet this heightened burden of proof, Petitioner should be released on appropriate conditions.

3. Respondents' Motion to Dismiss (ECF No. 13) is DENIED.

4. Petitioner Griselda Negrete Vargas' Emergency Motion for Temporary Restraining Order (ECF No. 16) is DENIED as MOOT.

5. Within 30 days of this order, Petitioner may file a motion requesting and substantiating reasonable fees and costs under the EAJA, the Federal Rules of Civil Procedure, and the Local Rules of Practice.

DATED this 21st day of April 2020.

_____
KENT J. DAWSON
UNITED STATES DISTRICT JUDGE